IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| PETE ARMIJO,<br><br>                        Plaintiff,<br>v.<br><br>CAROLYN W. COLVIN,<br><br>                        Defendant. | MEMORANDUM DECISION AND ORDER AFFIRMING DECISION OF THE COMMISSIONER<br><br>Case No. 2:12-cv-330 BCW<br><br>Magistrate Judge Brooke Wells |

This matter is before the Court on Plaintiff Pete Armijo's appeal from the denial of his application for Supplemental Security Income (SSI) and Disability Insurance Benefits (DIB). After careful consideration of the record and the briefs, the Court has determined that oral argument is unnecessary and decides this case based upon the record before it.[1]  For the reasons set forth below, the Court affirms the decision of the Administrative Law Judge (ALJ).[2]

## BACKGROUND

Plaintiff, Mr. Armijo, was born on May 6, 1958, and at the time of the ALJ's decision was 52 years old.  Plaintiff contends he is disabled "due to a combination of impairments including coronary artery disease and depression."[3]  In applying the required five-step sequential evaluation process for determining whether an individual is disabled,[4] the ALJ found the following.  At step one, the ALJ found that Plaintiff has not engaged in substantial gainful

---

[1] *See* Scheduling Order, docket no. 13 (noting that [o]ral argument will not be heard unless requested at the time of [the] filing first briefs by either party and upon good cause shown").
[2] Because the Appeals Council denied review, the ALJ's decision is the Commissioner's final decision for purposes of this appeal.  *See Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003).
[3] Plaintiff's Opening Brief at 3 (cited hereafter as POBr).
[4] *See Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005) (explaining the five-step sequential evaluation process for determining if a claimant is disabled); 20 CFR 404.1520(a), 416.920(a).

activity since December 1, 2006, the original alleged onset date that was later amended by Plaintiff to March 1, 2008.[5]

At step two, the ALJ found that Plaintiff had the severe impairments of coronary artery disease following bypass surgery and affective disorders.[6]  Mr. Armijo underwent coronary bypass surgery in December 2006 following a heart attack.[7]  Following the surgery Mr. Armijo did well for a time, but admitted at an office visit in 2007 that he had stopped following his diet and started drinking and smoking again.[8]  During the course of the next two years Plaintiff was diagnosed with atherosclerosis and hyperlipidemia.  The ALJ noted that at one point Mr. Armijo was also diagnosed for depression, "though this was made by a physician's assistant, and no treatment for depression was initiated other than to stop the beta blockers" that Mr. Armijo had been taking.[9]  Depression was not diagnosed by any other physician in the record.  A consultative psychologist diagnosed Plaintiff with an adjustment disorder "with mixed anxiety and depressed mood."[10]

At step three, the ALJ found that none of Mr. Armijo's impairments, either alone or in combination, met or equaled a listing.[11]

Next, the ALJ found that Plaintiff had the residual functional capacity (RFC) to perform light work as set forth in the CFR with the following limitations:

> [only] occasional climbing; frequent balancing, stooping, kneeling, crouching, and crawling; his ability to understand remember, and carry out instructions is not significantly limited; due to decreased attention and concentration he is limited to

---

[5] Tr. at 18 (Tr. refers to the administrative record).  During the hearing before the ALJ, the Plaintiff amended the alleged onset date to March 1, 2008.  Tr. at 35.  The date of onset is not material to the Court's decision.
[6] Tr. at 19.
[7] Tr. at 250.
[8] Tr. at 295 ("He has restarted smoking.  He had stopped for about 3 – 4 months and currently smokes 1 – 2 cigarettes a day."); Id. at 338 (noting during an office visit in 2010 that Plaintiff "smokes eight cigarettes a day and has smoked since he was 18 years of age.").
[9] Tr. at 19.
[10] Id.
[11] Tr. at 19-20.

judgment and decisions found in simple, routine work; he has the ability to respond appropriately to supervision, coworkers, and work situations in jobs with only occasional job-related contact with supervisors; he is not significantly limited in ability to deal with changes in a routine work setting.[12]

During the hearing Mr. Armijo testified that his primary problem is depression.  Mr. Armijo further testified that he quit smoking after his heart attack.[13]  In assessing Plaintiff's credibility the ALJ found that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment."[14]  In making this finding the ALJ specifically noted that the record shows Plaintiff "restarted smoking about 4 months after [heart] surgery and continued to smoke" despite being told to quit and alleging that he had done so.  The ALJ further found that the record did not support Mr. Armijo's alleged impairments of depression and tiredness noting there is no evidence that a doctor diagnosed or treated Plaintiff for depression.[15]

At step four, the ALJ found that Plaintiff was unable to perform any past relevant work.[16] Next, at step five, the ALJ in basing his decision on the testimony of a vocational expert, found that Plaintiff could perform the jobs of small parts assembler, production assembler, and mail clerk.[17]  Each of these jobs are classified as light and unskilled work.  The ALJ made further findings that Plaintiff was a younger individual on the alleged disability onset date and an individual classified as closely approaching advance age as of the date of the ALJ's decision.[18] Additionally, the ALJ found that Plaintiff has a limited education and is able to communicate in

---

[12] Tr. at 21.
[13] *Id.*
[14] Tr. at 21-22.
[15] Tr. at 22.
[16] Tr. at 22
[17] Tr. at 23.
[18] Tr. at 22.

English.  The ALJ did not make a determination as to whether Plaintiff's job skills were transferable because the "[t]ransferability of job skills is not material to the determination of disability because using the Medical-Vocation Rules as a framework supports a finding that the claimant is 'not disabled,' whether or not the claimant has transferrable job skills."[19]

## STANDARD OF REVIEW

The Court reviews the Commissioner's decision to determine whether substantial evidence in the record as a whole supports the ALJ's factual findings and whether the correct legal standards were applied.[20]  "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[21]

Additionally, the ALJ is required to consider all of the evidence; however, the ALJ is not required to discuss all evidence.[22]  In reviewing the ALJ's decision the Court should evaluate the record as a whole, including that evidence before the ALJ that detracts from the weight of the ALJ's decision.[23]  The Court, however, may neither "reweigh the evidence [n]or substitute [its] judgment for the [ALJ's]."[24]  Where the evidence as a whole can support either the agency's decision or an award of benefits, the agency's decision must be affirmed.[25]  Further, the Court "may not 'displace the agenc[y's] choice between two fairly conflicting views, even though the Court would justifiably have made a different choice had the matter been before it de novo.'"[26]

---

[19] Tr. at 23.
[20] *See Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).
[21] *Id*. (citation omitted).
[22] *Zoltanski v. FAA*, 372 F.3d 1195, 1200 (10th Cir. 2000).
[23] *Shepherd v. Apfel*, 184 F.3d 1196, 1199 (10th Cir. 1999).
[24] *Lax*, 489 F.3d at 1084 (citation omitted).
[25] *See Ellison v. Sullivan*, 929 F.2d 534, 536 (10th Cir. 1990).
[26] *Lax*, 489 F.3d at 1084 (quoting *Zoltanski*, 372 F.3d at 1200).

**ANALYSIS**

In applying the aforementioned standards, the Court has considered the Administrative Record, the parties' briefs and arguments.  The Court deems oral argument to be unnecessary, and finds as follows:

A.  The ALJ's Rejection of the Plaintiff's Treating and Examining Medical Providers

Plaintiff argues that the ALJ erred by improperly rejecting the opinions of his "treating and examining medical providers."[27]  Specifically, Plaintiff alleges that the ALJ "improperly rejected the claimant's mental health limitations with an assertion that the consultative psychologist was the only qualified person in the record to diagnose a mental impairment."[28] Mr. Armijo's "treating providers" made notes of his ongoing depression that Plaintiff alleges the ALJ dismissed as "clearly situational."  Next, Plaintiff argues that the ALJ's assertion that his depression does not appear to be an ongoing mental impairment is contradicted by the ALJ's own findings at step two.  Finally, Plaintiff asserts that the ALJ also erred in rejecting his mental impairments based on a lack of treatment.

In the 10th Circuit, "[t]he ALJ must give 'controlling weight' to the treating physician's opinion, provided that opinion 'is well-supported…and is not inconsistent with other substantial evidence.'"[29]  Additionally, as with other evidentiary matters, when an ALJ is considering medical opinion evidence, it is the ALJ's role to weigh and resolve evidentiary conflicts and inconsistencies.[30]  However, "[i]n choosing to reject [a] treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's

---

[27] POBr at 9.
[28] *Id.* at 11.
[29] *White v. Barnhart*, 287 F.3d 903, 907 (10th Cir. 2001) (citing 20 C.F.R. § 404.1527(d)(2)).
[30] *See e.g., Ruthledge v. Apfel*, 230 F.3d 1172, 1174 (10th Cir. 2000); *Eggleston v. Bowen*, 851 F.2d 1244, 1247 (10th Cir. 1988).

opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion."[31]

In this case, the ALJ found that Plaintiff suffers from the severe impairments of coronary artery disease following bypass surgery and affective disorders.[32]  The term "affective disorders" is defined as "a group of mental disorders characterized by a disturbance in mood."[33]  The Diagnostic and Statistical Manual of Mental Disorders (DSM) uses the term "mood disorder" in lieu of affective disorder.  Mood disorders include "the Depressive Disorders . . . , the Bipolar Disorders, and two disorders based on etiology—Mood Disorder Due to General Medical Condition and Substance-Induced Mood Disorder."[34]  Thus, inherently contained within the ALJ's severe impairment finding of affective disorder, is the disorder Plaintiff cited to as his primary problem—depression.

Plaintiff argues the ALJ erred by improperly rejecting the opinions of his "treating and examining medical providers."[35]  The Court disagrees.  The ALJ specifically noted that Plaintiff was diagnosed with depression by a physician's assistant but no treatment for depression was initiated except for having Plaintiff stop taking beta blockers.  A physician's assistant is not a "treating physician" and is not listed in the CFR as a medical source that can provide evidence to establish impairment.[36]  Thus, the treating physician rule does not apply to the physician assistant's opinion.  The ALJ did adopt the opinion of the consultative psychiatrist, Dr. Peter Heinbecker, who diagnosed Plaintiff with "adjustment disorder with mixed anxiety and

---

[31] *Langley v Barnhart*, 373 F.3d 119, 1121 (noting that the 10th Circuit "held years ago that an ALJ's assertion that a family doctor naturally advocates his patient's care is not a good reason to reject his opinion as a treating physician.") (quoting *McGoffin v. Barnhart*, 1248 F.3d 1252, 1253 (10th Cir. 2002)).
[32] Tr. at 19.
[33] Stedman's Medical Dict. 27th ed. (2000)  p. 525.
[34] Diagnostic and Statistical Manual of Mental Disorders IV TR (2000) p. 345.
[35] POBr at 9.
[36] *See* 20 C.F.R. 404.1513 (listing acceptable medical sources).

depressed mood."[37]  Dr. Heinbecker is an acceptable medical source under the regulations that

can establish impairment.[38]  In addition, the ALJ noted and discussed other medical evidence in

the record including other visits by Plaintiff to medical providers.  The Court finds the ALJ

properly considered the medical evidence found in the record.  Plaintiff may disagree with the

weight given to certain evidence, but such disagreement is not a basis for reversal of the ALJ's

decision.[39]

In similar fashion, the Court is not persuaded that the ALJ erred by noting the situational

nature of Plaintiff's depression.  Plaintiff was diagnosed with an adjustment disorder.  According

to the DSM, an essential feature of an adjustment disorders is "a psychological response to an

identifiable stressor or stressors that results in the development of clinically significant emotional

or behavioral symptoms."[40]  Here, there is evidence in the record of possible stressors that may

have led to Plaintiff's depression.[41]  For example, during a visit to a medical provider Plaintiff

indicated which stressors he thought may have led to his depression.  Plaintiff stated that "his

depression and anxiety were a response to his heart surgery, loss of his job, and the loss of his

wife."[42]  Thus, there was no error in the ALJ mentioning the possible situational nature of

Plaintiff's depression.

Finally, the Court disagrees with Plaintiff's assertion that the ALJ erred in rejecting his

mental impairments because of a lack of treatment.  A lack of treatment was not the sole basis

for the ALJ discounting Plaintiff's mental impairments.  Rather, it was one of a number of items

the ALJ considered in determining Plaintiff's credibility and Residual Functional Capacity

---

[37] Tr. 19, 337-41.
[38] *See* 20 C.F.R. § 404.1527 (e)(2)(i) (noting the expertise of state agency medical consultants whose opinions must be considered by the ALJ).
[39] *Shepherd*, 184 F.3d at 1199.
[40] Diagnostic and Statistical Manual of Mental Disorders IV TR  p. 679.
[41] Tr. 319, 327, 340 and 369 (noting that Plaintiff's depression appears related to his wife leaving him).
[42] Tr. 340.

(RFC).[43]  Moreover, this case is easily distinguishable from the ones cited to by Plaintiff because

the ALJ did not completely dismiss Plaintiff's mental impairments based on a lack of treatment.

Rather, the ALJ found that Plaintiff suffers from the severe impairment of affective disorders.

    B.  <u>The ALJ's Rejection of Plaintiff's Own Testimony</u>

        Plaintiff argues the ALJ improperly rejected his own testimony alleging that the ALJ

"failed to provide valid reasons for [a] negative credibility finding."[44]  The Court is not

persuaded by Plaintiff's position.

        "Credibility determinations are peculiarly the province of the finder of fact, and [the

Court] will not upset such determinations when supported by substantial evidence."[45]  However,

"[f]indings as to credibility should be closely and affirmatively linked to substantial evidence

and not just a conclusion in the guise of findings."[46]

        Here, there is substantial evidence in the record to support the ALJ's credibility

determination.  For example, during the hearing Plaintiff testified that he had quit smoking.  The

record, however, indicates that Plaintiff quit for a time but began smoking again going against

the advice of various medical providers.[47]  Further, as noted by the ALJ, there is no evidence in

the record of Plaintiff being treated for fatigue or depression.  And the ALJ specifically noted

visits by Plaintiff to medical providers that undermined his testimony given during the hearing.

Finally, Dr. Dennis Taggart, a state agency doctor, who reviewed Plaintiff's medical records in

January 2010 reached a similar opinion regarding Plaintiff's credibility.  Dr. Taggart opined that

---

[43] *See Hutson v. Bowen*, 838 F.2d 1124, 1132 (10th Cir. 1988) (noting possible factors that an ALJ may consider including "the extensiveness of the attempts (medical or nonmedical) to obtain relief").
[44] POBr at 13.
[45] *Diaz v. Secretary of Health & Human Servs.*, 898 F.2d 774, 777 (10th Cir. 1990)
[46] *Huston v. Bowen*, 838 F.2d 1125, 1133 (10th Cir. 1988) (footnote omitted).
[47] Tr 296-97, 314; Tr. 338 ("He smokes eight cigarettes a day and has smoked since he was 18 years of age.").

"[t]he claimant's allegations lack credibility because his subjective complaints and functional limitations are not supported by the evidence as a whole in the disabling degree alleged."[48]

Given the foregoing, and other evidence in the record,[49] the Court finds the ALJ's credibility finding as to Plaintiff is supported by substantial evidence in the record.

   C.   The ALJ's Step Five Finding

Plaintiff argues the ALJ "improperly denied his claim at step five based on an alleged ability to make a vocational adjustment to other work."[50]  Specifically, Plaintiff asserts that the ALJ's hypothetical did not include all of his limitations especially his inability to stand and/or walk more than 15 – 20 minutes at a time.

As Mr. Armijo correctly observes, once a claimant has made a prima facie showing of inability to return to past relevant work because of a severe medical impairment, the burden then shifts to the Commissioner to show that a claimant retains the requisite RFC to perform other work on a sustained basis available in significant numbers in the national economy.[51]  One way an ALJ meets this burden is by using vocational expert testimony to establish the existence of jobs in the national economy.  Testimony elicited from a vocational expert by hypothetical questions however must "relate with precision all of a claimant's impairments."[52]  Otherwise, the testimony cannot constitute substantial evidence to support an ALJ's decision.[53]

Here, the ALJ erred by stating that Plaintiff "was walking 15-20 minutes a day without angina, which is consistent with the capacity to perform light work."[54]  Light work, as set forth

---

[48] Tr. 328.
[49] Tr. 359-62 (concluding that the claimant "is capable of at least simple, low-stress work consistent with his physical RFC").
[50] POBr at 16.
[51] *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993); *Channel v. Heckler*, 747 F.2d 577, 579-81 (10th Cir. 1984).
[52] *Hargis v. Sullivan*, 945 F.2d 1482, 1492 (10th Cir. 1991).
[53] *Ekeland v. Bowen*, 899 F.2d 719, 724 (8th Cir. 1990).
[54] Tr. 22.

in the regulations, is defined as the ability to stand or walk for approximately six hours a day.[55] Given the evidence in the record, however, the Court finds this error by the ALJ to be harmless.

The Tenth Circuit has generally recognized the applicability of the harmless error doctrine in the administrative review setting context. [56] And, it has been applied in social security disability cases "though not always by name and without settling on a definitive characterization of its precise contours and range of application in this somewhat unique, nonadversarial setting."[57] The harmless error doctrine permits the court "to supply a missing dispositive finding . . . where, based on material the ALJ did at least consider (just not properly), [the court] could confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way."[58] The party challenging the administrative decision bears the burden of establishing that the error was prejudicial.

Here, Plaintiff asserts that it was prejudicial for the ALJ to not include his inability to stand and/or walk for more than 15 – 20 minutes at a time in Plaintiff's RFC and in the hypotheticals given to the vocational expert. Plaintiff, however, only cites to his own testimony as evidence of this limitation. There is no medical evidence in the record supporting Plaintiff's alleged limitation. Rather, there is evidence supporting the fact that Plaintiff has the capacity for light work. Dr. Taggart in reviewing the medical records opined that Plaintiff had the RFC to

---

[55] *See* SSR 83-10, 1983 WL 31251 ("the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday. Sitting may occur intermittently during the remaining time.").
[56] *See St. Anthony Hosp. v. United States Dep't of Health & Human Servs.*, 309 F.3d 680, 681 (10th Cir. 2002) (noting the harmless error rule applies to judicial review of administrative proceedings).
[57] *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004); *see e.g.*, *Gay v. Sullivan*, 986 F.2d 1336, 1341 n.3 (10th Cir. 1993) (noting that certain technical errors were "minor enough not to undermine confidence in the determination of th[e] case"; *Glass v. Shalala*, 43 F.3d 1392, 1396-97 (10ht Cir. 1994) ("ALJ's conduct, although improper, d[id] not require reversal").
[58] *Id.*

stand and or walk for about 6 hours in an 8-hour workday.[59]  Dr. Hedges opined that Plaintiff is "capable of at least simple, low-stress work."[60]  And, Dr. Heinbecker, following his examination of Plaintiff, did not place any restrictions on walking or standing due to fatigue.  Based on a review of the evidence in the record, the Court can confidently say that no reasonable administrative factfinder would side with Plaintiff's assertion that the ALJ's error was prejudicial.[61]

Finally, Plaintiff argues that when the vocational expert was asked to consider his limited ability to stay on task throughout a normal workday, the vocational expert testified he would not be able to sustain employment.[62]  The Court disagrees.  A close reading of the vocational expert's opinion indicates that he did not eliminate all work; rather, he reduced it by 30 percent to account for an inability to stay on task.[63]

## CONCLUSION

Based on the foregoing, the Court finds the ALJ's decision is supported by substantial evidence in the record.  Therefore, the Court AFFIRMS the decision of the Commissioner.


DATED this 3 May 2013.


Brooke C. Wells
United States Magistrate Judge

---

[59] Tr. 330.
[60] Tr. 362.
[61] *Allen*, 357 F.3d at 1145.
[62] POBr. p. 18-19.
[63] Tr. 70-71.